1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**O**
**JS-6**

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱
# ℭ𝔢𝔫𝔱𝔯𝔞𝔩 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 ℭ𝔞𝔩𝔦𝔣𝔬𝔯𝔫𝔦𝔞

| | |
|---|---|
| In Re: | Case No. 5:14-cv-02073-ODW |
| CITY OF SAN BERNARDINO, CALIFORNIA, | |
| Debtor, | **OPINION** |
| | **Appeal from the United States** |
| | **Bankruptcy Court for the Central** |
| SAN BERNARDINO CITY | **District of California, Riverside** |
| PROFESSIONAL FIREFIGHTERS | **Division;** |
| LOCAL 891 | **The Honorable Meredith A. Jury** |
| Appellant, | **Presiding (No. 6:12-bk-28006)** |
| v. | |
| CITY OF SAN BERNARDINO, CALIFORNIA, | |
| Appellee. | |

## I.   INTRODUCTION

Appellant San Bernardino City Professional Firefighters Local 891 (the "Union") appeals an order from the United State Bankruptcy Court for the Central District of California, Riverside Division, that granted in part and denied in part the City of San Bernardino's (the "City") motion to reject a memorandum of

1  understanding   between the Union and the City.  *San Bernardino City Prof'l*
2  *Firefighters Local 891 v. San Bernardino (In re City of San Bernardino)*, No. 6:12-bk-
3  28006, ECF No. 1187 (Bankr. C.D. Cal. Sept. 19, 2014) (the "*Rejection Order*").[1]
4  The Union raises six arguments on appeal.  The Union's principle argument is that
5  the City failed to meet the necessary burden of proof for setting aside a collective
6  bargaining agreement as established in *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513
7  (1984).   For the reasons discussed below, the Court **AFFIRMS** the Bankruptcy
8  Court's order in full.

9              **II.    FACTUAL AND PROCEDURAL BACKGROUND**
10 **A.    Original Labor Agreement and Attempts to Reach Extension**
11           Over a decade ago, the City and the Union entered into a labor agreement titled
12 "Fire Safety Employees Memorandum of Understanding – January 1, 2003 to June 30,
13 2009" (the "MOU").  (ER 160–214, 655.)[2]  The MOU contains an "evergreen clause"
14 which states:   "Upon expiration of the MOU and until a new MOU has been
15 negotiated between the Union and the City, all articles in this MOU shall remain in
16 full effect, unless otherwise stated in this MOU."  (*Id.* at 198.)  In June 2009, the
17 parties extended the MOU's expiration date to June 30, 2010.
18 / / /
19

20 [1] The *Rejection Order* is a two-page document that merely grants in part the Rejection Motion.  On
   November 7, 2014, the Bankruptcy Court published the "Findings of Fact and Conclusions of Law
21 Regarding Order Granting in Part and Denying in Part City of San Bernardino's Motion Authorizing
   Rejection of Collective Bargaining Agreement with San Bernardino City Professional Firefighters."
22 *In re City of San Bernardino*, No. 6:12-bk-28006, ECF No. 1262 (Bankr. C.D. Cal. Nov. 4, 2014)
23 (ER 3508–47).  The *Rejection Order* is the appealable final order, while the Bankruptcy Court's
   November 4, 2014 Order provides the justifications and is the scrutinized order on appeal.
24 Accordingly, both orders are treated as a single entity and are jointly referred to as the "*Rejection
25 Order*."
   [2] Due to the voluminous record below, the parties submitted their own excerpts.  While managing
26 two "records" is not ideal, the Court does not identify any conflict between the submissions and the
   parties raise no objections.  Citations to the "Excerpts of the Record" or "ER" denote the excerpts
27 submitted by the Union.  (ECF Nos. 13–23.)  Citations to the "Supplemental Excerpts of the Record"
   or "SER" denote the excerpts submitted by the City.  (ECF Nos. 29–42.)  The parties do not dispute
28 any facts on appeal.

On April 16, 2012, the City's director of human resources sent a letter to the Union's counsel asking to meet and confer to determine if the parties could reach an agreement on a successor MOU.  (*Id.* at 742.)  On April 25, 2012, the City sent another e-mail to the Union seeking to schedule MOU negotiations.  (*Id.* at 744–45.)  On June 18, 2012, Bob Heitzman sent an e-mail to the Union indicating that he was hired by the City to assist with labor relations.  (*Id.* at 747.)  Heitzman noted that it was imperative that the City and the Union begin meeting regarding the "extension of the current compensation or other alternatives."  (*Id.*)  The Union responded seeking clarification on the scope of discussions and the effect of a separate lawsuit between the Union and the City.  (*Id.* at 749–50.)  Heitzman replied that it would "take some time" to respond to all of the Union's questions, but he indicated that his request was to meet and confer for a successor MOU.  (*Id.* at 752–54.)  The parties agreed to meet on July 17, 2012.  (*Id.* at 752.)  On July 16, 2012, Heitzman postponed the meeting.  (*Id.*)

**B.     Bankruptcy Petition and Initial Financial Changes**

The City's financial situation deteriorated quickly in the summer of 2012.  The City ran out of cash to pay its creditors and employees, and had a projected budget deficit of $45.8 million.  (*Id.* at 82–84, 891.)  Personnel costs alone were projected to exceed all of the City's General Fund revenue.  (*Id.* at 84.)  On August 1, 2012, the City filed a voluntary bankruptcy petition under Chapter 9, Title 11 of the United States Code.  (*Id.* at 1–8.)  Five days later, the San Bernardino City Council (the "City Council") passed a resolution deferring certain employment payments to include cash-outs and sell-backs of unused leave time.  (SER 298–99.)

Shortly thereafter, the City contacted the Union to discuss modifications to the MOU.  (ER 150, 534–42, 546–51, 557–64.)  On September 10, 2012, the Union's labor negotiator, Corey Glave, responded that unless the City was willing to reverse or modify the City Council's cost-cutting measures, a meeting between the two parties was "really just a waste of time, money and resources for both the City and the

Union." (*Id.* at 547.)  On September 18, 2012, the City notified the Union that it hired a new attorney to handle labor negotiations and that it would like to begin MOU negotiations with the Union. (*Id.* at 761.)  The parties met on September 26, 2012, but did not conduct any MOU negotiations. (*Id.*)  After the City offered six dates for negotiations, Glave reiterated, *inter alia*, that recession of the cost-saving measures was a pre-condition to negotiations. (*Id.* at 57, 555–56; SER 571–57.)

**C.  Substantive Changes to Labor Agreements and Mediation**

On November 26, 2012, the City Council passed a "Pendency Plan" which set forth a series of expenditure reductions and required the City to negotiate contract modifications with the Union and the City's six other labor unions. (ER 56–60.)  Five unions reached agreements with the City to modify their employment agreements. (*Id.* at 147–49, 484–89.)  The Union and the City did not initially reach an agreement.

During January 2013, the City and the Union engaged in a confidential, and ultimately unsuccessful, mediation session before the Honorable Scott Clarkson. (*Id.* at 658, 3530.)  The parties met January 11, 17, and 23. (*Id.*)  On February 1, 2013, the City Council, relying on its fiscal emergency status, passed a resolution that imposed "interim terms and conditions of employment" for the Union. (*Id.* at 658.)

**D.  The Rejection Motion and Subsequent Discovery**

On March 4, 2013, the City filed a motion with the Bankruptcy Court seeking authorization to reject the MOU (the "Rejection Motion"). (*Id.* at 9–30.)  The Rejection Motion sought to set aside the MOU and *nunc pro tunc* approval of the City Council's February 1, 2013 resolution. (*Id.* at 29, 32–34.)

On March 8, 2013, the Union filed a Motion to Confirm the Termination of the Automatic Stay, or Alternatively, for Relief from Automatic Stay (the "Motion for Relief"). (*Id.* at 3625–3799.)  In its Motion for Relief, the Union sought relief to file an action in a non-bankruptcy forum to challenge the interim employment terms imposed by the City Council's February 1 resolution. (*Id.*)  On March 21, 2013, the Union filed a timely opposition to the Rejection Motion and raised two evidentiary

1    objections to declarations attached to the City's Rejection Motion.  (*Id.* at 625, 809–
2    16.)

3          On April 4, 2013, the Bankruptcy Court held a preliminary hearing on the
4    Rejection Motion.  (*Id.* at 817–85.)  At the hearing, the Bankruptcy Court defined
5    discovery limits in connection with the planned depositions of the City's witnesses,
6    but did not publish a corresponding discovery order.  (*Id.* at 837–78.)  Subsequent
7    hearings were scheduled, but were each continued to allow for further discovery.  (*Id.*
8    at 1058–59, 1090–97.)  On May 6, 2013, the parties filed a joint report regarding the
9    status of the discovery.  (SER 605–15.)

10         The Union, in opposing the Rejection Motion, deposed three witnesses that the
11   City cited and relied upon in its Rejection Motion.  (*Id.* at 777–803, 1001–1310.)  The
12   Union claims that the City instructed its key witnesses to not respond to several lines
13   of questioning at the depositions.  (ER 1167–1464.)  On July 10, 2013, the Union filed
14   a motion to strike the testimony of two of the City's three witnesses or, in the
15   alternative, to compel further answers to deposition questions.  (*Id.* at 1167–1464.)
16   The line of questioning at issue related to the City's ability to negotiate consensual
17   modifications to the MOU.  The City opposed the motion to strike, and on July 31,
18   2013, the Bankruptcy Court denied the Union's motion.  (SER 755–959, 970–71; ER
19   1465–1540, 1763–69.)  The Bankruptcy Court explained that it previously limited the
20   scope of discovery in a manner that justified the City's witnesses from responding to
21   certain questions.  (ER 3552–59.)  The Bankruptcy Court acknowledged that it did not
22   publish an order limiting the scope of discovery for the Rejection Motion.  (*Id.* at
23   3560–61.)

24         The Bankruptcy Court, at the request of the Union, continued the Rejection
25   Motion until it first determined whether the City was eligible for chapter 9 relief.  (*Id.*
26   at 637, 1770–74.)  From September 2013 through June 2014, the Rejection Motion
27   was continued to the same dates as the status conferences in the underlying chapter 9
28   case.  (SER 1527–30, 1539, 1542–44, 1463–66, 1574–78, 1587–88, 1590–94.)  The

1 Bankruptcy Court continued the hearing dates for the Rejection Motion fifteen
2 separate times.

3 **E.      Further Mediation and Meetings**

4      On September 5, 2013, the Bankruptcy Court appointed the Honorable Gregg
5 W. Zive as the Case Mediator and ordered all major creditors, which included the
6 Union, to participate in mediation before Judge Zive.  (*Id.* at 1467–68.)  The City and
7 the Union met on three separate occasions prior to mediation to discuss the City's
8 financial conditions and the City's cost-cutting proposals:  October 2013, December
9 2013, and February 2014.  (ER 2595.)

10      On May 23, 2014, the City and the Union met outside of the confidential
11 mediation process, and discussed the proposed budgets for the City and the fire
12 department.  (*Id.* at 2595–96.)  On May 27, 2014, the City and the Union attended a
13 mediation session before Judge Zive, and the City made a proposal to the Union
14 regarding changes to the MOU.  (*Id.* at 2596.)  This was the first mediation since the
15 failed mediation before Judge Clarkson in January 2013.

16      On June 19, 2014, the Bankruptcy Court granted the Union's request for relief
17 from the September 5 mediation order.  (*Id.* at 2152.)  After releasing the Union from
18 the mediation order, the Bankruptcy Court set a supplemental briefing schedule and
19 hearing date for the then-still-pending Rejection Motion.  (*Id.* at 2182–88.)  On July
20 18, 2014, the City delivered a proposal to the Union regarding implementation of a
21 fire department budget previously approved by the City Council.  (*Id.* at 2596.)  On
22 July 28, 2014, the City and the Union began discussing thirty-one proposed changes to
23 the MOU.  (*Id.* at 2655–2702.)  On July 30, 2014, the City sent the Union a revised
24 proposal.  (*Id.* at 2653–2702.)  The City and the Union met again on August 13, 2014,
25 August 25, 2014, and September 3, 2014 to discuss the proposed changes to the
26 MOU.  (*Id.* at 2597, 3089–90, 3093–3411.)

27 / / /

28 / / /

6

**F.     Adjudication of Rejection Motion**

On September 11, 2014, the Bankruptcy Court heard arguments on the Rejection Motion as it applied to the MOU.  (*Id.* at 2356–2491.)  On September 19, 2014, the Bankruptcy Court published the Rejection Order.  (*Id.* at 3448–50.)  The Rejection Order, while authorizing the City to reject the MOU, specifically declined to provide the City with *nunc pro tunc* relief relating to the February 1, 2013 City Council resolution or any relief authorizing the implementation of new terms and conditions.  (*Id.*)  The City then lodged, at the Bankruptcy Court's request, proposed findings of fact and conclusions of law.  (*Id.* at 3458–3507, 3800–49.)  The Union filed two separate objections and lodged its own proposed findings of fact and conclusions of law.  (SER 3006–19, 3485, 3808–26.)  After consulting with the California Public Employees Retirement System ("CalPERS"), the City lodged a revised findings of fact and conclusions of law, and replied to the Union's objections.  (*Id.* at 3097–3188, 3238–3467, 3827–66.)

On November 4, 2014, the Bankruptcy Court published its findings of facts and conclusions of law to support the *Rejection Order*.  (ER 3508–47.)  The Bankruptcy Court also published an order rejecting the Union's evidentiary objections.  (SER 2867–79.)

### III.     STANDARDS OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 158(a), and is sitting as a single-judge court of appeal.  The traditional appellate review standards apply.  The Court reviews the Bankruptcy Court's conclusions of law *de novo* and its factual findings for clear error.  *Salazar v. McDonald (In re Salazar)*, 430 F.3d 992, 994 (9th Cir. 2005).   Review under the clearly erroneous standard requires significant deference to the trial court.  *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1024 (9th Cir. 1999).

"A mixed question of law and fact occurs when the historical facts are established; the rule of law is undisputed . . . ; and the issue is whether the facts satisfy

the legal rule." *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir. 1997) (citing *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)).  "Mixed questions presumptively are reviewed . . . de novo because they require consideration of legal concepts and the exercise of judgment about the value that animate legal principles." *Id.* (citing *Boone v. United States*, 944 F.2d 1489, 1492 (9th Cir. 1991)).

A court's evidentiary rulings are reviewed for abuse of discretion.  *Watec Co. v. Liu*, 403 F.3d 645, 650 n.3 (9th Cir. 2005).  "To reverse on the basis of an erroneous evidentiary ruling, [a court] must conclude not only that the bankruptcy court abused its discretion, but also that the error was prejudicial." *Santa Barbara Capital Mgmt. v. Neilson (In re Slatkin)*, 525 F.3d 805, 811 (9th Cir. 2008) (internal citations omitted). "A reviewing court should find prejudice only if it concludes that, more probably than not, the lower court's error tainted the verdict."  *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1032 (9th Cir. 2003) (internal quotation marks omitted).

## IV.  ISSUES ON APPEAL

The Union raises six issues on appeal:

(1)  "Did the Bankruptcy Court err in finding the City met its burden of proof on the element of 'reasonable efforts to negotiate voluntary modifications to the collective bargaining agreement were made' under [*Bildisco*]?";

(2)  "Did the Bankruptcy Court err in finding that City met its burden of proof when it found the [MOU] was a burden on the City?";

(3)  "Did the Bankruptcy Court err by limiting discovery on the Motion for an Order Authorizing Rejection of the [Union's] Collective Bargaining Agreement?";

(4)  "Did the Bankruptcy Court err by (a) waiting 18 months to render a decision on the [City's] Motion for an Order Authorizing Rejection of the [Union's] Collective Bargaining Agreement, and (b) authorizing further briefing?";

(5)  "Did the Bankruptcy Court err in finding the City can reject the [MOU] under 11 U.S.C. § 365 even though the [MOU] expired under its own terms pre-petition?"; and

1    (6)   "Did the Bankruptcy Court err by issuing an advisory opinion on the

2    'practical effect' of the rejection of the [MOU]?"  (Appellant Br. 3–4.)

3                                  **V.    DISCUSSION**

4            The parties do not dispute the applicable law or the factual record for the six

5    issues on appeal.   Instead, the Union merely contests the Bankruptcy Court's

6    application of facts to law and discretionary rulings.   As discussed below, the Court

7    must reject each of the Union's arguments.   The Court will discuss each issue in turn.

8    **A.    Issue 1:  Reasonable Efforts to Negotiate**

9            The first issue on appeal is whether the City made reasonable efforts to

10   negotiate voluntary modifications to the MOU.   This issue involves mixed questions

11   of law and fact and is reviewed *de novo*.   *See In re Bammer*, 131 F.3d at 792.

12           Bankruptcy Code section 365(a) provides that a debtor "may assume or reject

13   any executory contract."   11 U.S.C. § 365(a).   In *Bildisco*, the Supreme Court held

14   that the language "executory contract" in section 365(a) includes collective bargaining

15   agreements.   *Bildisco*, 465 U.S. at 521–22.   *Bildisco* instructs that in order for a debtor

16   to reject a collective bargaining agreement under section 365(a), the debtor must

17   show; (1) "reasonable efforts to negotiate a voluntary modification have been made,

18   and are not likely to produce a prompt and satisfactory solution," (2) the agreement is

19   a burden on the debtor, and (3) the balance of the equities weigh in favor of the

20   rejection.   *Id.* at 526.   The debtor bears the burden of establishing that these factors are

21   satisfied.   *Id.*

22           Chapter 9 of the Bankruptcy Code, which authorizes a municipality to

23   discharge its debt through bankruptcy, incorporates section 365(a).   11 U.S.C. §

24   901(a); *see also In re City of Vallejo*, 403 B.R. 72, 77 (Bankr. E.D. Cal. 2009) *aff'd in*

25   432 B.R. 262 (E.D. Cal. 2010) ("Congress incorporated section 365 into chapter 9

26   without restricting or limiting its application to collective bargaining agreements.").

27   "The judicial consensus is that *Bildisco* controls rejection of collective bargaining

28   agreements in chapter 9 cases."   *Ass'n of Retired Employees of the City of Stockton v.*

1    *Stockton (In re City of Stockton)*, 478 B.R. 8, 23 (Bankr. E.D. Cal. 2012); s*ee also In*
2    *re City of Vallejo*, 432 B.R. at 272 ("The Bankruptcy Court properly concluded that a
3    municipality operating under Chapter 9 may utilize 11 U.S.C. Section 365 to reject a
4    CBA, if the municipality can show that the requirements of *Bildisco* are met.");
5    *Orange County Employees Ass'n v. Orange (In re County of Orange)*, 179 B.R. 177,
6    183 (Bankr. C.D. Cal. 1995) ("*Bildisco* applies in Chapter 9.").

7         The inquiry into whether a municipality made "reasonable efforts to negotiate a
8    voluntary modification" involves the application of case-specific facts to the law.
9    Here, the parties do not dispute the law or the operative facts, but instead dispute the
10    Bankruptcy Court's application.   The Bankruptcy Court concluded that the City
11    satisfied *Bildisco* by making reasonable efforts to negotiate a modification to the
12    MOU.   *Rejection Order* at 34–37.   The Bankruptcy Court reached this conclusion
13    based on the "aggregate" of the following events:

14             (a) the efforts made by the City in the first few months of the
15             bankruptcy case to meet with the [Union], (b) the
16             subsequent unsuccessful mediations between the City and
17             the [Union] involving first Judge Clarkson and then Judge
18             Zive, and (c) the meetings between the City and the [Union]
19             in the five weeks after the City submitted its comprehensive
20             set of proposals to the [Union] on or about July 28, 2014.
21    *Id.* at 35.

22         The Bankruptcy Court also explained that a prompt and satisfactory solution
23    was not likely because the Union made no concessions to the City's offers even
24    though the Union was informed that modifications were necessary. *Id.* at 35–36. The
25    Bankruptcy Court further noted that the lack of meetings was a result of the Union's
26    "reluctance to engage with the City" and the Union refused to negotiate without first
27    receiving a comprehensive proposal, which is not required under *Bildisco*. *Id.* at 36.
28    / / /

1    On appeal, the Union makes two arguments regarding the reasonableness of the
2    City's efforts to negotiate.  First, the Union claims that the evidence of reasonable
3    efforts is "scant" and the Bankruptcy Court relied on "innuendo and supposition"
4    stemming from the confidential mediation sessions.  (Appellant Br. 16.)  The Union
5    argues:  "The fact that the parties attended mediation does not sufficiently establish
6    reasonable efforts to negotiate voluntary modifications to the MOU were made; the
7    'reasonableness' of the City's efforts to 'negotiate' cannot be ascertained by
8    speculating on matters that occurred in a confidential mediation session."  (*Id.*)

9    The Union's argument is legally unsupported and lazy.  As an initial matter, the
10   mediation sessions were not the only occasions in which the parties met.  The parties
11   began discussions before the City even filed its voluntary petition and met on
12   numerous occasions outside the mediation process.  Communications between the
13   parties began as early as April 2012.  In fact, it was the Union's representative Glave
14   that refused to meet in the fall 2014 despite the City's efforts to find a workable time.
15   (ER 57, 555–56; SER 571–57.)  The City's willingness to meet and compromise, and
16   the Union's stubbornness, is quite apparent from the wealth of e-mail traffic between
17   the parties.  (*Id.*)  The Union's claim that the evidence regarding reasonable efforts is
18   "scant" is a misrepresentation of the evidence.

19   Furthermore, the Union wants this Court to believe that because the mediation
20   sessions were confidential, the City can therefore not prove that they acted reasonably
21   during the mediation.  The Union cites no law for this proposition.  The City and the
22   Union mediated before Judge Clarkson for at least three days, and before Judge Zive
23   at least once.  The City showed up on time, sent the appropriate negotiators, and spent
24   hours upon hours talking with Union representatives.  The Court does not need to
25   know the precise talking points of those discussions to conclude that such conduct was
26   reasonable.  There is no legal requirement that the Court pour over the contents of a
27   mediation to determine if negotiations were reasonable.  In fact, *Bildisco* only requires
28   "reasonable efforts *to negotiate* a voluntary modification" without any mention of

1   judicial review of all matters discussed during negotiations.  *Bildisco*, 465 U.S. at 526.
2   The Union's reading of *Bildisco* would render all unsuccessful, confidential
3   mediations *per se* unreasonable.  *Bildisco* does not require the parties to reach a
4   resolution and recognizes that even the lack of a "prompt" resolution can justify
5   rejection of a collective bargaining agreement.  *Id.*  The parties mediated on at least
6   four occasions, met outside the mediation process on at least three occasions, and
7   exchanged a host of e-mails and phone calls regarding meeting times and
8   modifications.  The Union cannot rely on the confidentiality of the mediation to claim
9   the City failed to carry its burden.  The Court rejects the Union's over-zealous reading
10  of *Bildisco*.

11      The Union's second argument regarding the reasonableness of negotiations is
12  equally as vapid.  The Union argues:  "the evidentiary record demonstrates the City
13  made no real effort to make consensual changes to the MOU or negotiate a new
14  MOU."  (Appellant Br. 16.)  In making this claim, the Union cherry picks the facts it
15  wants while ignoring the entirety of the record.  The Union also fails to cite any
16  authority involving similar facts.  Essentially, the Union wants the Court to take its
17  word.  The Union is correct that six months passed between the imposition of the
18  interim terms of employment and the mediation sessions, but it is equally true that
19  Union representatives refused to meet, the City kept the Union informed on the
20  financial conditions and employment proposals, and the City struck deals with five of
21  the other labor unions.  The record is replete with e-mails from the City seeking times
22  to meet with the Union.  The legal standard is reasonableness—not "no real effort"—
23  and the City's extensive outreach to communicate and meet with the Union, while in
24  the midst of a financial collapse, unquestionably satisfies *Bildisco*.

25      The District Court in *In re City of Vallejo* affirmed a bankruptcy court's
26  "reasonableness" findings on grounds that the bankruptcy court "ordered the parties to
27  judicially supervised settlement talks" and the record indicated "almost two years of
28  negotiations between the City and its unions."  432 B.R. at 275.  The efforts in this

case, also spanning nearly two years and involving judicially supervised settlement talks, were at least as expansive as those in *In re City of Vallejo*.  There is no authority to suggest otherwise.  The Bankruptcy Court found that the City acted reasonably, and based on its own review of the record, this Court agrees.  The Union's "no real effort" argument is rejected.

In passing, the Union complains that the Bankruptcy Court "did not reference" the Union's proposed findings of fact in the Rejection Order.  (*Id.* at 17.)  The Union fails to identify any of the alleged facts that the Bankruptcy Court ignored and how those facts would impact the case.  The Bankruptcy Court is the finder of fact.  It has the duty to weigh the evidence and make factual conclusions.  The Bankruptcy Court did its job.  If the Union wants to challenge the Bankruptcy Court's factual conclusions, it should have made a "clearly erroneous" argument.  There is no legal principle that requires a court to "reference" the proposed findings of fact from both parties.  The Court therefore rejects this cursory argument.

The Court concludes that the City made reasonable efforts to make voluntary modifications to the MOU, thus satisfying the standard from *Bildisco*.  The Bankruptcy Court's conclusion on this issue is affirmed.

**B.     Issue 2:  MOU a Burden on the City**

The second issue on appeal relates to the City's claim that the MOU was a financial burden to reorganization.  This is also a mixed question of law and fact reviewed *de novo*.  *See In re Bammer*, 131 F.3d at 792.

As explained *supra*, the second element in *Bildisco* requires the debtor to prove that the collective bargaining agreement is a burden on the debtor's ability to reorganize.  *Bildisco*, 465 U.S. at 525–26.  The Bankruptcy Court found that the "City submitted substantial evidence that the MOU was a burden on the City's ability to recover from its insolvency."  *Rejection Order* at 37.  The Bankruptcy Court noted the costs of unnecessary overtime, the costs of paying CalPERS premiums, and the Union's refusal to agree to any modification that required more pension contribution

1   from the Union's members.  *Id.* at 37–38.  The Bankruptcy Court also noted the City's
2   dire financial situation and lack of funds to provide necessary services to its citizens.
3   *Id.*

4       On appeal, the Union claims that the City failed to prove it was financially
5   burdened by focusing on the testimony of the City's financial expert, Michael Bush.
6   The Union argues that Mr. Bush "did not have an accurate understanding of the
7   finances" and "could not testify as to what the overall cost savings to the City would
8   be if the [Union] contract was rejected."  (Appellant Br. 18.)  The Union further
9   argues that a "cost to the City is not the equivalent of a 'burden' on the City under
10  *Bildisco*."  (*Id.*)  The Union claims that Bush admitted that he did not factor the budget
11  surplus and "cost savings for concessions of other employee groups," and therefore
12  the City failed to carry its burden of proof.  (*Id.*)

13      The Unions arguments are flawed for several reasons.  First, it is clear that the
14  Union does not understand how the bankruptcy process works.  On October 16, 2013,
15  the Bankruptcy Court issued an order confirming the City's eligibility to file for
16  chapter 9 bankruptcy.  (SER 1483–1514.)  In that order, the Bankruptcy Court ruled
17  that "[t]he uncontroverted facts establish that the City is insolvent.  The City was
18  unable to pay its forthcoming obligations when the resolutions were passed and faced
19  a cash deficit of $45.9 million for fiscal year 2012–2013.  This issue is uncontested."
20  (SER 1500.)  It was also undisputed that the City's personnel costs alone surpassed
21  the entire General Fund.  (ER 89.)  The costs of public safety—specifically the fire
22  and police departments—accounted for 72 percent of the City's annual budget.  (*Id.* at
23  83–84.)  Despite these uncontested facts, the Union has the audacity to now claim that
24  there is not enough evidence that the MOU was a burden.  *Any* financial obligation for
25  an insolvent debtor is a burden, which is why a debtor would seek bankruptcy
26  protection in the first place.

27      Additionally, the Court is appalled that the Union would suggest that the cuts to
28  other labor unions must be considered before its own MOU is deemed a burden.

14

There is no law anywhere that allows a creditor to sandbag the bankruptcy process and then claim its debt is not a burden because other creditors already took cuts. The Union is not entitled preferential treatment because it held out the longest and refused to negotiate. This sly attempt to discredit the worth of the other public sector labor unions is astounding.

Second, the Union waived any argument it had to challenge Bush' testimony. During the proceedings before the Bankruptcy Court, the Union did not offer its own expert evidence regarding the MOU's burden and expressly waived an opportunity for an evidentiary hearing and cross-examination of Bush. (ER 2366, 2374, 2382, 2408, 3509.) In its Rejection Order, the Bankruptcy Court explains that the "City's evidence on the financial burden of the contract was entirely unrebutted by any admissible evidence presented by the [Union], who chose to not present any expert testimony to counter the testimony of Michael Bush." *Rejection Motion* at 2. By not challenging the financial burden of the MOU before the Bankruptcy Court, the Union waived any right to do so on appeal. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (holding arguments not raised in the bankruptcy court are waived on appeal). In presenting this meritless argument, the Union even fails to cite a single page from the record or a single authority.

In passing, the Union also claims that the Bankruptcy Court's findings regarding the burden of the MOU were flawed due to several evidentiary errors. First, the Union argues that the Bankruptcy Court relied on evidence "submitted after the initial hearing on the Rejection Motion" and "[t]hese items should not have been admitted by the Court because they were untimely." (Appellant Br. 19.) The Union claims that the "Bankruptcy Court erred when it relied upon these untimely pleadings." (*Id.*) Unsurprisingly, the Union cites *zero* authority for this claim. This argument is baseless. The Union did not object to the Bankruptcy Court's consideration of this evidence until after it entered the Rejection Order, and thus this argument is waived on appeal. *See Mercury Interactive Corp.*, 618 F.3d at 922.

1   Furthermore, evidentiary rulings are reviewed under an abuse of discretion standard

2   and the appellant must show prejudice.  *McEuin*, 328 F.3d at 1032.  Lower courts are

3   afforded "broad discretion" in evidentiary rulings.  *Harper v. Los Angeles*, 533 F.3d

4   1010, 1030 (9th Cir. 2008).  There is no rule that prohibits evidentiary submissions

5   following a hearing and there is no viable argument that the Bankruptcy Court

6   committed any abuse of direction.  The proceedings below were a fluid situation, and

7   the Bankruptcy Court took the steps it felt were appropriate to reach the correct result.

8   Affording the Bankruptcy Court broad discretion to consider filings after a posted

9   hearing date, the Court finds no abuse of discretion.  The Court therefore rejects the

10  Union's argument.

11          The Court concludes that the MOU was a financial burden to the City.  The

12  Bankruptcy Court's conclusion on this issue is affirmed.

13  **C.    Issue 3:  Discovery Limits**

14          The third issue on appeal relates to the Bankruptcy Court's April 4, 2013

15  discovery order related to the Rejection Motion.  At the April 4 hearing, the Union

16  sought permission from the Bankruptcy Court to depose the City's negotiators who

17  were cited in the City's Rejection Motion.  (Appellant Br. 19.)  The Union "sought

18  information relating to the City's ability to negotiate consensual modifications to the

19  MOU" after the City disclosed a proposed budget.  (*Id.* at 21–22.)  As noted in the

20  factual background section, *supra*, the Bankruptcy Court issued an oral order setting

21  parameters for the deposition request.  The Bankruptcy Court limited the depositions

22  of the City's negotiators—Diana Leibrich and Linda Daube—to the source and scope

23  of their authority to negotiate voluntary modifications to the MOU. (*See* ECF No. 560

24  at  17:11–15, 33:12–22, 55:3–8, 60:14–16.)   On June 10, 2013, the Union filed a

25  "Motion to Strike Evidence, or in the Alternative, to Compel Deposition Responses."

26  (ECF No. 686.)  The motion claimed that Leibrich and Daube refused to answer the

27  following questions:  "(1) the nature and extent of alleged negotiations between the

28  City and the [Union]; (2) whether the City's negotiators had authority to conduct good

faith negotiations with the [Union] as opposed to merely proposing a predetermined ultimatum." (*Id.* at 2.)

At a hearing on July 31, 2013, the Bankruptcy Court denied the Union's motion. (ECF No. 720.) The Bankruptcy Court described the Union's motion as "unrealistic" and "backwards." (*Id.* at 5.) In explaining why it limited the depositions to only the authority to negotiate, the Bankruptcy Court explained:

> The nature and extent of the alleged negotiations between the City and the [Union] I said before at the first hearing, the second hearing, and now that it takes two parties to negotiate. It doesn't matter what was in the state of mind of the two women negotiating for the City, what was discussed in closed session, which is clearly confidential anyway, what might have been discussed with counsel which is privileged anyway, those things to the extent they were not communicated to the unions are just never going to come into relevant evidence, admissible evidence with the Court with concern. So inquiring further about that wouldn't assist the Court in making the decision. [¶] I did believe that the source and scope of the power of the negotiator's authority to negotiate was important. . . . So I am going to deny this motion and I – no argument by the [Union] is going to change my mind. It is not within the scope of what I allowed and, in addition to that, the deponents actually answered many questions beyond the scope of what I allowed and I certainly don't mind that they did that, but they have answered the questions that are relevant to the Court's decision.

(ER 1475–76.)

Here, the Union argues that "the Bankruptcy Court abused its discretion when it limited the [Union's] depositions of the City's witnesses." (Appellant Br. 19.) The Union claims that Federal Rule of Civil Procedure 26 authorizes broad discovery and a federal court may only limit discovery where justice requires the protection of a party from "annoyance, embarrassment, oppression, or undue burden or expense." (*Id.* at 20–21 [quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1979)].) According to the Union, "[o]ther than saving the City the cost of responding to discovery, there was no other basis for limiting discovery," and "there was no evidence that the costs would unduly burden the City; the Bankruptcy Court simply assumed significant costs would be incurred and elected to *sua sponte* limit discovery." (*Id.* at 21.) The Union further argues that "[t]o ascertain the City's ability to negotiate anything more than a take-it-or-leave-it offer, the [Union] questioned the City's negotiators on the subject" and "[i]f responses were provided, it is likely that the discovery requests would have revealed whether or not the City could actually make reasonable efforts to negotiate consensual changes above its budgetary bottom-line." (*Id.* at 22.)

All of the Union's arguments are meritless. First, the Bankruptcy Court's discovery limitations had nothing to do with costs to the City. The Bankruptcy Court does not even mention the costs to the City. Instead, it correctly found that the deposition of the City's negotiators was not another opportunity for the Union to rehash issues from the confidential bargaining table. Discovery was limited to the scope of the negotiators' authority and it appears that those questions were answered. (ER 1307–12, 1314–18, 1321, 1324–34, 1338–40.)

Furthermore, a trial court "is vested with broad discretion to permit or deny discovery, and a decision to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1084 (9th Cir. 2003) (internal quotation marks and citations omitted). The Union fails to make a

"clearest showing" of "substantial prejudice."  The Bankruptcy Court succinctly explains that the confidential and privileged information from negotiations was not relevant in its determination of whether the City made reasonable efforts to negotiate under *Bildisco*.  The Bankruptcy Court determined that it did not need all of the specifics of the negotiations to decide the issue.  Both parties engaged in the same negotiation and both already knew exactly what occurred during that process. Deposing the negotiators on those same negotiations is simply not necessary or relevant.   The Union's argument, which is unsupported by any precedent, is soundly rejected.  The Union fails to make any showing of prejudice.

In passing, the Union complains that the Bankruptcy Court failed to publish a formal discovery order and this failure "created[d] havoc in discovery."  (Appellant Br. 22.)  The Union never once requested a written order, never availed itself of other remedies before the Bankruptcy Court, and never raised this objection below.  This torpid argument is waived.  *See Mercury Interactive Corp.*, 618 F.3d at 922.

The Court concludes that the Bankruptcy Court did not abuse its discretion in limiting discovery.

**D.     Issue 4:  Delay in Issuing Order**

The fourth issue on appeal focuses on the length of time between the filing of the Rejection Motion and its final disposition.  The Rejection Motion was filed on March 8, 2013, and the Bankruptcy Court issued the Rejection Order on September 19, 2014.  The Union challenges the Bankruptcy Court's docket management, and such challenge is reviewed for an abuse of discretion.  *Preminger v. Peake*, 552 F.3d 757, 769 n.11 (9th Cir. 2008).

Section 365 does not impose any deadlines for court rulings rejecting executory contracts.  11 U.S.C. § 365.  The Court cannot find, and the Union fails to identify, any rule or statute that mandates a bankruptcy court to issue any ruling within a certain time period.  Relying on no case law or statutory authority, the Union argues that it was prejudiced by the delay because it "resulted in a second round of briefing

1   whereby the City was given another opportunity to brief the Rejection Motion and

2   was given a right to reply to any opposition of the [Union] to the supplement."

3   (Appellant Br. 26.)   There are no allegations that the City was provided with

4   opportunities that the Union did not have.  Both parties were treated equally and the

5   Court strains to see any logic behind the Union's claim that more briefing is bad.

6   Ironically, the Union even requested the Bankruptcy Court to continue the hearing on

7   the Rejection Motion.  (ER 637.)  The proceedings below involved no less than seven

8   different unions, dozens of creditors, millions of dollars of debt, and several

9   confidential mediations.   The Bankruptcy Court did not abuse its discretion by

10  allowing the complex factual record to develop and both parties additional briefing

11  opportunities.    There is simply no rule preventing the Bankruptcy Court from

12  authorizing further briefing and evidence, and the Court rejects any invitation to

13  meddle with a lower court's docket management.   The Bankruptcy Court did not

14  abuse its discretion and the Court, therefore, rejects this legally unsupported claim.

15      The Union further argues that the delay in ruling on the Rejection Motion left

16  the interim terms of employment—previously imposed on February 1, 2013—in effect

17  for an "unprecedented" and "protracted" period.  (Appellant Br. 26.)  The Union

18  acknowledges that "*Bildisco* provides a temporary safe-haven for [the] City while its

19  Rejection Motion was pending," but the interim terms of employment "became

20  something more than 'interim'" because the Bankruptcy Court did not immediately

21  rule on the Rejection Motion.  (*Id.* at 27.)

22      Once again, the Union makes an argument without any support in the law.  The

23  Union does not even bother to analogize examples from other areas of law, but instead

24  relies on hollow supposition.  The Union's claim that the Bankruptcy Court's delay

25  was "unprecedented" and "protracted" is unfounded, and its claim that the interim

26  terms were "something more than 'interim'" is unreasonable.  *Bildisco* explicitly

27  authorizes the imposed interim terms in this case, and the Court is not inclined to

28  / / /

20

1    create an arbitrary rule regarding the outer limit of "interim."  There was no error of

2    law or abuse of discretion.  This argument is rejected in full.

3           The Court concludes that the Bankruptcy Court did not abuse its discretion in

4    ruling on the Rejection Motion.

5    **E.    Issue 5:  Expiration Before Rejection**

6           The fifth issue on appeal concerns the expiration of the MOU.  Most of the

7    Union's arguments on appeal concern the City's ability to reject the MOU.  The

8    Union also offers an argument in the alternative: "The Bankruptcy Court erred when it

9    found the MOU could be rejected even though it expired pre-petition."  (Appellant Br.

10   23.)

11          The Union argues that the MOU was "extinguish[ed]" in 2011.  The MOU

12   contains an evergreen clause which states that the MOU's terms and conditions

13   remain in full effect after the MOU expires unless a new MOU is negotiated.  (ER

14   198.)  The MOU expired naturally on June 30, 2010 without a new agreement.  The

15   parties do not dispute that the MOU initially remained in effect.  On appeal, the Union

16   claims that the MOU was "extinguish[ed]" on February 22, 2011 when the City

17   Council passed Resolution 2011-33.  (Appellant Br. 23.)  Resolution 2011-33

18   unilaterally imposed certain employment conditions on the Union's members.  The

19   Union claims that the MOU "lost all characteristics of a contract upon the codification

20   of the terms and conditions in Resolution 2011-33 because the terms and conditions of

21   employment were not consensual."  (*Id.* at 24.)  The Union further argues that "the

22   Court's factual finding that the MOU continued on as a result of an 'evergreen' is

23   faulty; the MOU cease[d] to exist upon the implementation of Resolution 2011-33 and

24   any 'evergreen' clause that may have existed in the MOU was extinguished.  If not,

25   then the 2011-33 Resolution would be void in its entirety."  (*Id.*)

26          This argument is meritless for a number of reasons.  First, the Union waived

27   this argument by not raising it below.  The Union never once argued to the

28   Bankruptcy Court that Resolution 2011-33 extinguished the entire MOU, and in fact,

the Union continually argued that the MOU was still in effect.  The Union's opposition to the Rejection Motion repeatedly acknowledged that the MOU was in effect (ER 632–60), and the Union's proposed statement of facts also acknowledges that the MOU was in effect (SER 3817; *see also* ER 2757–3048, SER 2006–19, 3458–3807, 3808–26 ).  The Union even requested that the Bankruptcy Court conclude that "the evergreen clause in the MOU is enforceable, and the MOU is subject to rejection under Section 365(a)."  (*Id.*)  The Union's new claim that "[Resolution 2011-33], and not the MOU, were the terms and conditions of employment that existed on the Petition Date," contradicts the first half of its appellate brief as well as every representation it made to the Bankruptcy Court.  Accordingly, the Union's argument is waived.  *See Mercury Interactive Corp.*, 618 F.3d at 922.

Second, and notwithstanding the waiver issue, the Union's argument is meritless.  The evergreen clause states that the MOU remained in effect "until a new MOU has been negotiated."  (ER 198.)  The Union's claim that the MOU was "extinguish[ed]" is factually and legally unsupported.  Resolution 2011-33 contains no language that suggests that the entire MOU is void or that the evergreen clause is no longer applicable.  The Union conveniently makes no mention of the terms in Resolution 2011-33 or why those terms would extinguish the entire MOU, but both parties concede that some of those terms came directly from the MOU and others were thrown out by a California Superior Court.  (ER 792–94.)  In addition to lacking any factual basis for this claim, there is no authority to support the Union's position.  No legal authority supports the Union's argument that an entire MOU is nullified as a result of a city council employment resolution.  The parties are bound by the plain language in the MOU's evergreen clause.  The Court rejects this argument in full.

## F.   Issue 6:  Advisory Opinion

The sixth issue on appeal relates to the scope of the Bankruptcy Court's Rejection Order.  The Union argues that the Bankruptcy Court held that the "'practical effect' of rejection of the MOU is the right afforded to the City to implement new

terms and conditions of employment" and "[s]ection 365 does not provide any authority for the Bankruptcy Court" to make this conclusion.  (Appellant Br. 27–28.)  These conclusions, according to the Union, "constitute an impermissible advisory opinion."  (*Id.* at 28.)

The statement from the Bankruptcy Court at issue is as follows:  "For that reason, where a court approves rejection of a collective bargaining agreement under Section 365(a), the practical effect of rejection is that the debtor is permitted to implement new terms and conditions of employment, notwithstanding that there may be applicable labor laws that permit such changes only after the parties have negotiated to impasse."  (ER 3540.)  This statement from the Bankruptcy Court is nothing more than dicta.  Contrary to the Union's claim, the Bankruptcy Court's statement did not authorize the imposition of new employment terms.  The statement merely recognizes the proper legal standards going forward.  There is no basis in the law for this Court to overturn an order from a bankruptcy court solely on dicta.  The statement from the Bankruptcy Court is an accurate statement of the law and does nothing to change the relationship between the parties.  The Court rejects this argument in full.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# VI.   CONCLUSION

The Court hereby **AFFIRMS** the Bankruptcy Court's Order Granting in Part and Denying in Part City of San Bernardino's Motion Authorizing Rejection of Collective Bargaining Agreement with San Bernardino City Professional Firefighters. *In re City of San Bernardino*, No. 6:12-bk-28006, ECF No. 1187.  The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

May 7, 2015

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**